UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LUIS ALBERTO AYALA,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 5:17-cv-1374-JDE<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Luis Alberto Ayala ("Plaintiff") filed a Complaint on July 10, 2017, seeking review of the Commissioner's denial of his application for supplemental security income ("SSI"). The parties filed consents to proceed before the undersigned Magistrate Judge. In accordance with the Court's Order Re: Procedures in Social Security Appeal, the parties filed a Joint Submission ("Jt. Stip.") on June 27, 2018. The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter now is ready for decision.

# I.
# BACKGROUND

Plaintiff filed applications for SSI and Disability Insurance Benefits ("DIB") on July 8, 2014, alleging disability on June 2, 2014, in both applications. Administrative Record ("AR") 19, 205-14. After his applications were denied initially (AR 128-35) and on reconsideration (AR 141-50), Plaintiff requested an administrative hearing (AR 151-52), which was held on January 31, 2017. AR 36-81. Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff, through counsel, withdrew his DIB application. AR 38-39.

On March 16, 2017, the ALJ issued a written decision finding Plaintiff was not disabled. AR 19-29. The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 8, 2014, and suffered from the following severe impairments: coronary artery disease, status post percutaneous transluminal angioplasty and stent placement; history of congestive heart failure; and obesity. AR 21. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 22. The ALJ also found Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967. AR 23. The ALJ found Plaintiff was incapable of performing his past relevant work as a tow truck operator. AR 27-28. However, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. AR 28. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. AR 29.

On May 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7.

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review a decision to deny benefits. An ALJ's findings should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Even if an ALJ errs, the decision will be upheld if the error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

# III.
# DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):

<u>Issue No. 1</u>: Whether the ALJ properly considered the relevant medical evidence of record in this case in assessing Plaintiff's RFC; and

<u>Issue No. 2</u>: Whether the ALJ properly considered Plaintiff's subjective statements in assessing Plaintiff's RFC.

## A. Objective Medical Evidence

With respect to Issue No. 1, Plaintiff contends that the ALJ "failed to properly consider significant and relevant medical evidence."

### 1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009); <u>see also</u> 20 C.F.R. § 416.902. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." <u>Id.</u>

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. <u>Carmickle v. Comm'r, Sec. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal

quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

### 2. Analysis

Plaintiff argues that the ALJ did not properly consider: (1) the weight accorded to the opinion of Dr. Shadi Qasqas ("Dr. Qasqas"), a treating physician; (2) Plaintiff's alleged vision impairment; and (3) Plaintiff's alleged knee impairment. Jt. Stip. at 4-10. The Commissioner argues that the ALJ properly weighed the medical evidence. Id. at 10-13.

#### a. Dr. Qasqas

On March 31, 2015, Dr. Qasqas, who had seen Plaintiff monthly since June 2014, found Plaintiff was incapable of walking one city block without rest or severe pain and could walk only ten minutes before needing to sit. AR 670-71. He opined Plaintiff needed to lie down or recline for roughly four hours in an eight-hour workday due to pain and fatigue and could not lift or carry any weight, grasp, turn, or twist objects, reach bilaterally, or climb. AR 671-72. Dr. Qasqas also found Plaintiff's pain would keep him off-task more than 30% of the workday, all rendering him unable to work full-time. AR 673.

The ALJ accorded "little weight" to the opinion of Dr. Qasqas because it was "brief, conclusory, and inadequately supported by clinical findings." AR 26. The ALJ noted that Dr. Qasqas's limitations were inconsistent with Plaintiff's self-reported abilities and Plaintiff's admitted activities of daily living, such as grocery shopping and household chores. Id. The ALJ observed that Dr. Qasqas's opinion was inconsistent with the findings of Dr. Bahaa

5

Girgis ("Dr. Girgis"), a consultative examining physician. Id. Finally, the ALJ concluded that Dr. Qasqas's opinion was not supported by medically acceptable clinical or diagnostic findings. Id.

Plaintiff argues that the ALJ erred in disregarding limitations set forth by Dr. Qasqas and instead relying on the opinions of Dr. Girgis and the state agency physicians. Jt. Stip. at 9. The Court finds the ALJ provided specific and legitimate reasons for discounting Dr. Qasqas's contradicted opinion.

First, the ALJ appropriately discounted Dr. Qasqas's stated limitations as they were inconsistent with Plaintiff's self-reported abilities. See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600-02 (9th Cir. 1999) (an inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason to discount a treating physician's opinion). For example, Dr. Qasqas opined Plaintiff could not lift or carry any weight (AR 672), but Plaintiff testified he could carry a gallon of milk and potentially two gallons of milk for a limited period of time. AR 53.

Second, the ALJ properly noted the functional limitations proffered by Dr. Girgis were discordant with those proffered by Dr. Qasqas. For instance, while Dr. Qasqas opined that Plaintiff would need to lay down for four hours out of an eight-hour workday, Dr. Girgis concluded Plaintiff was capable of light exertional work and could stand and/or walk for six hours of an eight-hour workday with frequent stops. AR 25 (citing AR 426-27). As Dr. Girgis based his conclusions on an independent examination of Plaintiff, the ALJ permissibly relied on those findings. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings alone was substantial evidence for rejecting conflicting opinion from a treating source).

Third, the ALJ properly found that Dr. Qasqas's opinion was not supported by the objective medical evidence. See Thomas v. Barnhart, 278

6

F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings."). Although Plaintiff notes the reference to an echocardiogram in Dr. Qasqas's functional assessment (Jt. Stip. at 8 (citing AR 674)), this evidence was considered by the ALJ in the context of his review of the objective medical evidence. See AR 25. The ALJ noted improvement in Plaintiff's heart condition over a period of time, citing: (i) a February 2015 assessment from Dr. Qasqas revealing unremarkable cardiac findings; (ii) a March 2015 examination revealing a normal heart rate and rhythm, without evidence of murmur or gallop, and otherwise unremarkable cardiac findings; and (c) a May 2015, examination revealing normal cardiovascular findings and an improved echocardiogram. AR 25 (citing AR 623, 668, 745). The ALJ's conclusion is supported by substantial evidence. See Morgan, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ properly considered the medical testimony.

### b. Vision

Plaintiff asserts that the ALJ did not consider issues stemming from "cataracts and vitreous degeneration." Jt. Stip. at 6 (citing AR 534-37). But during the hearing, Plaintiff's counsel noted that Plaintiff underwent cataract surgery resulting in his vision being "relatively well[-corrected]" and not a "disabling problem[]," and Plaintiff, when asked at the hearing if he could see "okay" after surgery, testified: "Yes, pretty much, yes." AR 40, 49-50. An ALJ did not need to discuss every piece of evidence, and the ALJ did not err in failing to note Plaintiff's non-disabling vision issues. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." (internal quotation marks and citation omitted)).

### c. Knees

Plaintiff asserts that the ALJ erred in concluding knee tendon tears were non-severe impairments and in failing to consider the functional limitations purportedly assessed by Dr. Ronny Ghazal ("Dr. Ghazal") and treatment notes from Dr. Brian T. Yost ("Dr. Yost"), in assessing Plaintiff's RFC. Jt. Stip. at 5-6.[1] The Court will address each of these arguments in turn.

At step two of the sequential evaluation process, the claimant has the burden to show that he has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at step two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); accord § 416.921. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation marks omitted). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id. (requiring analysis beyond step two where there was not a "total absence of objective evidence" of a severe impairment).

---

[1] Plaintiff also argues that the ALJ failed to consider subjective complaints of knee pain. Jt. Stip. at 5 (citing AR 338, 454). The Court will analyze the ALJ's evaluation of Plaintiff's subjective symptom testimony in the next section.

8

Here, at step two, the ALJ provided a lengthy explanation for finding that Plaintiff's knee impairment was not severe. For example, he noted that in November of 2014, a consultative examination of the Plaintiff's knees revealed unremarkable findings. AR 22 (citing AR 425). He referred to the consultative examiner's treatment notes, which explained that Plaintiff's knees had no joint effusion, no deformity, no crepitus, no mediolateral or anteroposterior instability, and range of motion was grossly normal bilaterally. Id. The consultative examiner noted that Plaintiff's gait was normal and he ambulated without an assistive device. AR 22 (citing AR 423). The ALJ also determined that Plaintiff received conservative treatment for his knee pain, including using ACL knee braces and undergoing physical therapy. AR 22 (citing AR 423, 759). The ALJ observed a magnetic resonance image ("MRI") scan for Plaintiff's right knee in June 2015 revealed Plaintiff had mild tendinitis, but Plaintiff had reported in July 2016 that his right knee had responded favorably to physical therapy. AR 22 (citing AR 759-62). The ALJ concluded that "[t]he medical and other evidence establish that [Plaintiff's] medically determinable impairment of bilateral knee patellar tendonitis, and right knee partial patellar tendon tear causes only a slight abnormality that would have no more than a minimal effect on his ability to work." AR 21-22. The Court finds that the ALJ's determination at step two relating to Plaintiff's knee impairment is "clearly established by medical evidence." Webb, 433 F.3d at 687.

With respect to Dr. Ghazal, Plaintiff asserts that on July 18, 2016, Dr. Ghazal assessed the following limitations: sitting tolerance of twenty-five minutes; standing tolerance of twenty minutes, ambulation tolerance of twenty minutes. Jt. Stip. at 5-6 (citing AR 762-64). As a preliminary matter, as the Commissioner notes (Jt. Stip. at 10-11), the citations upon which Plaintiff relies are not from Dr. Ghazal but rather are progress notes from Plaintiff's physical therapy. See AR 759 (titled "PHYSICAL THERAPY PROGRESS

9

REPORT"), 765 (notes signed by "Bassam Hannaway, PT"). Further, the ALJ did, in fact, consider the findings from Plaintiff's physical therapy progress notes in his evaluation of Plaintiff's knee impairments (see AR 22 (citing AR 759-62, 764)), but determined Plaintiff's impairments were non-severe given the findings from Dr. Girgis's consultative examination and Plaintiff's positive response to physical therapy and non-prescription medication. Further, opinions of physical therapists are not evidence from an "acceptable medical source," but instead constitute an "other source." Bowser v. Comm'r of Soc. Sec., 121 F. App'x 231, 239 (9th Cir. 2005) (citing 20 C.F.R. § 404.1513(a)). An ALJ may rely on the opinions and notes of Plaintiff's physicians over the treatment notes from the physical therapist. See Huff v. Astrue, 275 F. App'x 713, 716 (9th Cir. 2008) (where a physical therapist's assessment of a claimant contradicted the findings of an acceptable medical source, the ALJ properly relied on the acceptable medical sources). Accordingly, the ALJ did not err in his consideration of Plaintiff's physical therapy progress notes.

As to Dr. Yost, Plaintiff notes Dr. Yost found Plaintiff had bilateral knee ACL ruptures, but Plaintiff does not argue how the ALJ erred with respect to Dr. Yost. Jt. Stip. at 5 (citing to AR 706). A mere diagnosis by itself does not dictate a finding that a claimant is disabled nor that an impairment is severe. See Holaday v. Colvin, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."); see also Mahan v. Colvin, 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a severe impairment.").

Plaintiff argues that he "fails to see how the [ALJ] could possibly describe his knees as being non severe . . . ." However, when "evidence is susceptible to more than one rational interpretation," an "ALJ's conclusion must be upheld." Morgan, 169 F.3d at 599. Here, the ALJ notes in the

10

decision that he had considered the arguments offered by Plaintiff's counsel at the hearing regarding limitations with respect to standing and/or walking due to his knee pain and cardiac impairments and concluded that the objective clinical and diagnostic evidence in the record did not support additional limitations, citing Dr. Girgis's treatment notes, which indicated that Plaintiff walked with a normal gait, ambulated without an assistive device, and generally displayed unremarkable findings. Id. (citing AR 423-25). Plaintiff argues that Dr. Girgis found that Plaintiff should be limited to standing and walking six hours in an eight-hour workday with frequent stops (Jt. Stip. at 6 (citing AR 426)), but that limitation is consistent with the full range of light work, which the ALJ assessed in Plaintiff's RFC (AR 23). See Social Security Ruling 83-10 (". . . the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

It is an ALJ's duty to synthesize record evidence to determine a claimant's RFC. 20 C.F.R. §416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your record."). Here, the ALJ properly formulated Plaintiff's RFC.

In sum, the Court finds that the ALJ appropriately considered the medical evidence.

**B.  Plaintiff's Subjective Symptom Testimony**

In Issue No. 2, Plaintiff argues the ALJ improperly discounted his subjective symptom testimony.

**1. Applicable Law**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v.

11

Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**2. Analysis**

Plaintiff completed an exertional activities questionnaire on August 10, 2014. AR 244-46. He indicated his heart was only "working at 10%-15%" and if he walked longer than five minutes he would need to stop because he became short of breath; specifically, he wrote it would take him fifteen minutes to walk "1/2 way down the block." AR 244. He wrote he could lift no more than five pounds and was able to lift a gallon of milk and a grocery bag with boxes of cereal once a week. AR 245. He stated that he did not drive, work on cars, clean, do yard work, or do his own grocery shopping or chores as his sister did "everything for [him] with the exception of showers." AR 245-46. Plaintiff stated he took two naps a day for periods of an hour to an hour; if he overexerted himself he experienced stabbing pains in his chest and cramping in his left arm above the elbow. AR 246.

During the administrative hearing, Plaintiff testified that he had undergone two surgeries as a result of a heart attack. AR 44-45. He stated his heart problems caused dizziness, vertigo and fatigue, requiring him to take two naps a day, never going more than four hours without a nap. AR 45. He complained of pain in his knees, with greater pain coming from his right knee, caused by a bike accident. AR 47, 59. Plaintiff stated he had not had surgery or

injections but had done physical therapy and taken over-the-counter medication. AR 47. To control the pain in his knees, Plaintiff stated he would lie down, elevate his feet, and take a "pain killer." AR 48. He indicated he could stand for no more than twenty minutes at a time and could walk two city blocks before experiencing pain or having to stop. Id. Plaintiff testified he could sit for no longer than twenty minutes at a time. AR 49. He said he drove his son to school, which was a five-minute drive each way. AR 51. He could lift a gallon of milk while grocery shopping and could lift two gallons of milk "one time," but could not lift the equivalent of two gallons of milk every fifteen minutes during an eight-hour period as it would cause chest pain. AR 52-53. Plaintiff stated that he had taken a five-hour cross-country flight to Florida with his son, experiencing discomfort in his knees during the flight, which required him to get up frequently to stretch. AR 57-59. Plaintiff also participated in a hike at Mt. Rubidoux, a three and one half mile course, but Plaintiff only made it up "the first couple of turns" before he had to turn back, with the hike lasting "probably like maybe ten minutes." AR 60-63.

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements "concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 24. The ALJ concluded Plaintiff's testimony was belied by the objective medical evidence, his conservative treatment, and his admitted activities of daily living. Id. As explained below, the ALJ provided legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony.

First, the ALJ discredited Plaintiff's symptom testimony because his allegations of disabling pain were not supported by objective medical evidence. See AR 24. "Although lack of medical evidence cannot form the sole basis for

13

discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. The ALJ noted that in August 2014, Plaintiff alleged bilateral knee pain reduced his ability to work and required him to use a cane to walk. AR 24 (citing AR 246,422-23). The ALJ determined these allegations were belied by treatment records from November 2014 indicating unremarkable findings after examination of Plaintiff's knees, including a normal range of motion in both knees, "no evidence of effusion, deformity, crepitus, or instability," treatment notes indicating Plaintiff walked and moved easily, with normal gate, without an assistive device. AR 24 (citing AR 425-26). These records and findings support the ALJ's conclusion. See Garza v. Colvin, 2015 WL 1285307, at *9 (C.D. Cal. Mar. 20, 2015) (finding allegations of disabling knee pain not credible where claimant exhibited no antalgic gait, and normal standing on heel and toe, and did not use an assistive device to ambulate). The ALJ properly considered inconsistency with the objective medical evidence as one of at least two valid factors supporting the decision to discount Plaintiff's symptom testimony. See Burch, 400 F.3d at 681.

Second, the ALJ discredited Plaintiff's symptom testimony because he had only received conservative treatment. See AR 24. The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding. See Parra, 481 F.3d at 750-51 ("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"). The ALJ noted Plaintiff's treatment included recommendations for knee braces and physical therapy. AR 24 (citing AR 423-26, 745-57). After an MRI scan of Plaintiff's right knee revealed Plaintiff had mild tendonitis, Plaintiff began physical therapy. AR 22 (citing AR 759-62). Plaintiff indicated he felt stronger overall after physical therapy, and in particular noted improvement with his right knee. AR 22 (citing AR

14

764). Further, at the hearing, Plaintiff testified he had never taken narcotic medication for his knee pain and instead relied primarily on over-the-counter medications and physical therapy. AR 47-48. The ALJ found "[n]o additional aggressive treatment was recommended or anticipated" for Plaintiff's knee pain (AR 22), which Plaintiff does not refute. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). The ALJ's finding regarding conservative treatment was a clear and convincing reason to discount Plaintiff's statements of a disabling impairment. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by conservative treatment).

Third, the ALJ also discounted Plaintiff's subjective symptom testimony based on his daily activities, specifically, his ability to travel across country, perform household chores, hike, drive a vehicle, and shop, finding the "physical and mental abilities requisite to perform many of the[se] tasks . . . as well as the social interactions replicate those necessary for obtaining and maintaining employment. AR 24. The Ninth Circuit has "repeatedly warned that ALJs must be inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if his level of activity [was] inconsistent with [a

claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016

Here, without reaching the issue, even if the ALJ erred in relying on Plaintiff's activities of daily living as a basis for discounting his symptom testimony, as long as there remains "substantial evidence supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. Batson v. Comm'r of Soc. Sec. Admin, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Here, the Court finds that ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, specifically, the lack of supporting objective medical evidence, which cannot be the only ground, and Plaintiff's conservative treatment, in discounting Plaintiff's subjective symptom testimony. Those grounds, together, are sufficient to affirm the ALJ's decision on the issue.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: August 16, 2018

_____
JOHN D. EARLY
United States Magistrate Judge